UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANN RICHMOND, | ) |
|           Plaintiff | ) |
| vs. | ) CAUSE NO. 2:12-CV-243 RM |
| OFFICER DAVID SWINFORD, et al., | ) |
|           Defendants | ) |

## OPINION and ORDER

The defendants in this case — Officer David Swinford and Commander Joseph Cinko of the Dyer, Indiana, Police Department, Dyer Chief of Police Richard Quinn, and the Town of Dyer — contend they are entitled to summary judgment on Ann Richmond's excessive force claim under 42 U.S.C. § 1983 because they are entitled to qualified immunity. The court disagrees. Because a reasonable trier of fact could find that Officer Swinford used unreasonable force to arrest Ms. Richmond and a reasonable police officer would have known it to be excessive at the time, the court denies the defendants' summary judgment motion.

The defendants argue that the doctrine of qualified immunity bars Ms. Richmond's excessive force claims against Officers Swinford and Cinko. The law provides qualified immunity to governmental actors performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Sallenger v. Oakes, 473 F.3d 731, 739 (7th

Cir. 2007). The qualified immunity doctrine allows recoveries for irresponsible uses of power while allowing those who perform their duties reasonably to be free from suit. Pearson v. Callahan, 555 U.S. 223, 231 (2009). A qualified immunity claim requires a court to decide whether, when ordinary summary judgment standards are applied, (1) the officials' conduct violated a constitutional or statutory right, and if so (2) whether, at the time of the violation, the right was so clearly established that a reasonable official would know the conduct violated that right. Saucier v. Katz, 533 U.S. 194, 201-202 (2001); Catlin v. City of Wheaton, 574 F.3d 361, 365 (7th Cir. 2009).

The defendants argue that the doctrine of qualified immunity bars Ms. Richmond's excessive force claims against Officers Swinford and Cinko. The law protects government officials from suit or liability for acts that don't violate clearly established statutory or constitutional rights known to reasonable officials. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This approaches provides remedies for injuries inflicted by those who exercise their power irresponsibly while shielding from suit those government actors who have acted reasonably. Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Resolution of a qualified immunity defense requires a court to consider whether the facts, considered in the light most favorable to the plaintiff, show that the conduct of the government actors — here, Officer Swinford and Commander Cinko — violated her constitutional rights; if a constitutional right was violated, the court must decide if that right was clearly established at the time of the

2

alleged injury, such that a reasonable officer would understand that his actions were in violation of that right. Saucier v. Katz, 533 U.S. 194, 201-202 (2001); Catlin v. City of Wheaton, 574 F.3d 361, 365 (7th Cir. 2009). The specific conduct in question needn't have been held unlawful for the violation of the right to be clearly established, but the specific conduct's unlawfulness must be apparent in light of pre-existing law. Anderson v. Creighton, 483 U.S. 635, 640 (1987). A plaintiff confronting a qualified immunity defense must either identify a closely analogous case or show that the conduct was so unreasonable and egregious that no reasonable officer could have thought the conduct to be permissible. Abbott v. Sangamon County, Ill., 705 F.3d 706, 723-724 (7th Cir. 2013).

Summary judgment is appropriate when, and only when, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255.

As a preliminary matter, the defendants move to strike two of the exhibits Ms. Richmond submitted in opposition to the summary judgment motion. The "Model Policy" for dealing with the mentally ill must be stricken because the

3

record contains nothing to authenticate it. Federal Rule of Civil Procedure 56(c)(4) requires Ms. Richmond to show that the model policy would be admissible in evidence, and nothing in this record would allow a trier of fact to find that it is what Ms. Richmond says it is. *See* FED R. EVID. 901(a). The police log must be stricken for the same reason, but the analysis of the summary judgment motion is the same with or without the police log. Ms. Richmond says the police log shows that Officer Swinford had her on the ground within two minutes of his arrival on the scene. Even without the log, the court must accept as true, for summary judgment purposes, the testimony of Ms. Richmond's son and an EMT that only two to three minutes passed before she was taken to the ground. Because the court also must draw all reasonable inferences in Ms. Richmond's favor for summary judgment purposes, she was taken to the ground about two minutes after Officer Swinford arrived, even when the log is stricken.

It is uncontested that first Officer Swinford, then Commander Cinko, arrived at Ms. Richmond's house in response to this call by the police dispatcher: "Ambulance and PD requested for elderly female subject who's having a 10-96 episode (possible mental condition) per 10-16 (domestic trouble) at 2301 Calumet Avenue." They found Ms. Richmond running barefoot into the yard, waving her arms and yelling that no one would listen to her. Officer Swinford positioned himself between Ms. Richmond and the house and tried to calm her down. Ms. Richmond was between Officer Swinford and Commander Cinko. Ms. Richmond says she suffers from bipolar disorder and was having a nervous breakdown; the

4

summary judgment record indicates that Officer Swinford had some awareness of her mental health issues (how much is not clear), and the "10-96" reference in the dispatch alerted him that someone at the scene might be mentally ill. Mr. Richmond refused Officer Swinford's directive to get in his car (she eventually was acquitted of a disorderly conduct charge based on this refusal) and Officer Swinford moved toward her to handcuff her. Officer Swinford and Ms. Richmond fell to the ground; Ms. Richmond's upper left forearm was broken in the fall.

To prevail on her claim at trial, Ms. Richmond will have to show that the force Officer Swinford used was objectively greater than necessary to arrest her. Scott v. Harris, 550 U.S. 370, 381 (2007). In making that decision, the trier of fact will consider the specific situation that Officer Swinford confronted, including the severity of the crime at issue, whether Ms. Richmond posed an immediate threat to the safety of the officers or others, and whether Ms. Richmond was actively resisting arrest or trying to flee. Graham v. Connor, 490 U.S. 386, 396 (1989). The officer's awareness of any mental illness on the suspect's part also is a factor. Cyrus v. Town of Mukwanago, 624 F.3d 856, 862 (7th Cir. 2010).

To decide whether a reasonable jury could find for Ms. Richmond under that test on this record, analysis begins with what a reasonable jury could find the situation facing Officer Swinford to have been. Ms. Richmond can't deny that she resisted Officer Swinford's effort to handcuff her by pulling her hands away. A jury convicted Ms. Richmond of that charge, and the federal factfinder can't go behind that verdict, Heck v. Humphrey, 512 U.S. 477, 484 (1994), but that verdict only

5

establishes what Ms. Richmond did when Officer Swinford tried to place handcuffs on her. It doesn't resolve how much force Officer Swinford used or intended to use, or what led to Officer Swinford's attempt to place her in handcuffs. *See* Hardrick v. City of Bolingbrook, 522 F.3d 758, 764 (7th Cir. 2008); Gilbert v. Cook, 512 F.3d 899, 901 (7th Cir. 2008).

Officer Swinford says that when he arrived, he saw Ms. Richmond push her father off his feet while coming out of the house. Ms. Richmond and her sons deny that she knocked her father off his feet (though they agree some contact was made), and an EMT says he didn't see Ms. Richmond make any contact with her father. The defendants say that since the analysis must be made from Officer Swinford's perspective and nothing in the record contradicts Officer Swinford's testimony that he thought he saw a push, the reasonableness of the force must be evaluated from the perspective of an officer who believed Ms. Richmond had just committed a battery on an elderly man.

A reasonable trier of fact could find differently. A jury that credited the testimony of Ms. Richmond, her two sons, and Dyer EMT Jeffrey Zendzian reasonably could find that Ms. Richmond didn't push her father; from that, the same reasonable jury could find that Officer Swinford couldn't have seen what didn't happen, and so could find that Officer Swinford didn't believe Ms. Richmond had pushed her father. The jury that could find that an event didn't happen isn't required to believe Officer Swinford's testimony that he believed the event happened. Of course, a reasonable jury might find that Ms. Richmond really

6

did push her father off his feet, or that it looked that way from Officer Swinford's angle of view. But those possibilities don't come into play when deciding whether material issues of fact preclude summary judgment.

Any offensive contact by Ms. Richmond on her father could amount to a battery under Indiana law, but Officer Swinford says his decision to use force was based on his belief that he saw her push her elderly father off his feet. Evaluation of the reasonableness of the use of force needn't address the possibility that Ms. Richmond might have committed a crime by brushing past her father, unless that crime was battery by pushing him off his feet.

Beyond the battery for which she was arrested, Officer Swinford testified that since an ambulance had been called (he hadn't been told why), he also had to consider whether an injured person might be in the house. Such a concern is objectively reasonable. But when Officer Swinford decided Ms. Richmond needed to be handcuffed, she wasn't obstructing him from going to the house to see if anything was wrong. Officer Swinford had positioned herself between Ms. Richmond and the house. Ms. Richmond might have pursued him had he turned to approach the house, but Commander Cinko was no further from Ms. Richmond than Officer Swinford was. Ms. Richmond was making quite a public scene, but she wasn't preventing Officer Swinford from checking to see if anyone was hurt.

Concern that an injured person might be inside is pertinent in another way, though. Much of Ms. Richmond's brief is devoted to her thought that Officer Swinford wasn't patient enough, that he should have let her vent long enough to

7

calm down. Ms. Richmond doesn't really explain the materiality of how patient Officer Swinford was or should have been. It's not for a summary judgment court to decide that Officer Swinford was as patient as the law requires, but a factual dispute over patience precludes summary judgment only if the law requires patience.

Returning to the inquiry under Graham v. Connor, and viewing the evidence and reasonable inferences in Ms. Richmond's favor, this is the situation that Officer Swinford confronted, if all evidence is viewed, and all inferences drawn, as favorably as reasonably possible to Ms. Richmond:

> *Severity of the Crime at Issue.* The crime Officer Swinford had reason to think had happened was disorderly conduct: it might reasonably have appeared that Ms. Richmond refused a lawful order from a police officer. Officer Swinford might have been concerned that a crime of violence had been committed in the house, but he was arresting Ms. Richmond for disorderly conduct. Disorderly conduct is a Class B Misdemeanor under Indiana law.
>
> *Whether Ms. Richmond Posed an Immediate Threat to the Safety of the Officers or Others.* Officer Swinford described Ms. Richmond as "just throwing her hands up. She was so agitated that she was throwing her hands up as vigorously as you can imagine and screaming at the top of lungs, 'No one's listening to me,' over and over." Officer Swinford reports no

verbal threats or visible weapons. Commander Cinko was present and attentive.

*Whether Ms. Richmond Was Actively Resisting Arrest or Trying to Flee.* Officer Swinford said he had no chance to tell Ms. Richmond he was arresting her. It would follow that Ms. Richmond actively resisted arrest (as established at her misdemeanor trial), but didn't try to do so until Officer Swinford attempted to use force.

With this background, the court turns to the level of force that was applied. Officer Swinford testified that he tried to grab Ms. Richmond's right wrist, but she pulled it away and spun to face him. Officer Swinford says he then grabbed her left wrist and tried to get it behind her back to handcuff her. He says Commander Cinko tried to control her right arm as he (Officer Swinford) reached for his handcuffs, but Ms. Richmond continued to struggle, at one point shouldering Officer Swinford in the chest. Concluding that he and Commander Cinko wouldn't be able to handcuff Ms. Richmond without taking her to a prone position on the ground, Officer Swinford says he tried to use the "arm-bar takedown technique" that he had learned at the Indiana Law Enforcement Academy. With her right wrist in his hand, he says, he pushed an agitated Ms. Richmond's left shoulder toward the ground, but he lost his balance as she continued to struggle, and both fell to the ground, with Ms. Richmond's shoulder giving a loud "pop" on the way down.

That might be exactly what happened, but the question at this stage is what a jury reasonably might find to have happened, and the record contains other descriptions that might be inconsistent with Officer Swinford's description. Dyer EMT Robert Poorenga said Officer Swinford grabbed Ms. Richmond's wrist and brought her down in one smooth motion; Ms. Richmond's son Robert Kingdollar testified that Officer Swinford brought her to the ground in one continuous motion, as well. These descriptions create factual questions about whether Officer Swinford tried to handcuff Ms. Richmond before taking her to the ground. A reasonable jury could find that in an attempt to arrest an obstreperous woman who posed no immediate threat to anyone's safety but who could be thought to have committed a misdemeanor offense of lesser seriousness, Officer Swinford tackled her as she tried to struggle free. Applying the law as it is understood today, that reasonable jury could find that the force Officer Swinford used was objectively unreasonable.

It remains to decide whether the right Ms. Richmond asserts was clearly defined at the time. It was. The interaction between Ms. Richmond, Officer Swinford and Commander Cinko happened on November 22, 2010. In McAllister v. Price, 615 F.3d 877 (7th Cir. 2010), which was decided on August 12, 2010, the court of appeals found a triable issue when a jury could find that a police officer took a suspect to the ground to handcuff him after pulling the suspect (who actually was in a state of hypoglycemic shock) over for suspected driving while intoxicated. The McAllister court reviewed three prior cases (two from the circuit

10

level and a district court case), none of which presented identical facts, and found that the right to be free from such treatment was clearly established at the time of the March 1, 2006 incident. 615 F.3d at 885-886.

For all of these reasons, the court GRANTS the defendants' motion to strike designated evidence [docket # 62] and DENIES the defendants' motion for summary judgment on the issue of qualified immunity [docket # 43].

SO ORDERED.

ENTERED: <u>November 20, 2013</u>

<u>/s/ Robert L. Miller, Jr.</u>
Judge, United States District Court